# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JARRON CHAPMAN, a minor suing by and through his mother and next friend, ARTIVIA J. DRAKE<br><br>Plaintiff,<br><br>v.<br><br>KATHLEEN OUELLETTE, MARGARET CHERUBINI, GREGORY ZIOGAS, MICHAEL HARRIS, WATERBURY BOARD OF EDUCATION<br><br>Defendants. | No. 3:14-cv-01411 (MPS) |

## MEMORANDUM AND ORDER

Plaintiff, Jarron Chapman, brings this lawsuit through his mother and next friend, Artivia J. Drake, against Defendants, Kathleen Ouellette, Margaret Cherubini, Gregory Ziogas, Michael Harris, and the Waterbury Board of Education. (ECF No. 1.) Chapman alleges that Defendants (1) deprived him of his liberty and property rights, including his right to a public education under the Connecticut Constitution, without due process of law and in violation of the Fourteenth Amendment to the United States Constitution as enforced through 42 U.S.C. §§ 1983 and 1988 (*id*. ¶ 15); (2) deprived him of his privacy rights under state law (*id*. ¶ 16); and (3) engaged in extreme and outrageous conduct knowing it was likely to cause him emotional distress (and that did cause him emotional distress). (*Id.* ¶¶ 16-17.)[1] Chapman seeks compensatory damages, punitive damages, attorney's fees, costs, and a temporary and permanent injunction requiring

---

[1] Paragraphs 15, 16, and 17 of Plaintiff's complaint are mistakenly labeled as paragraphs 5, 6, and 7, respectively.

Defendants to return Chapman "to good standing as a student at Crosby High School and to cease and desist from all efforts to expel him." (*Id*. at 5-6.)

Defendants have moved for summary judgment against the Plaintiff, and the Plaintiff has not opposed the motion. The Plaintiff filed a response to Defendants' motion for summary judgment stating that "[Plaintiff's counsel] agrees that the defendants' arguments are legally sound and therefore will not oppose the motion." (ECF No. 30.) The Court must nonetheless undertake its own analysis. *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004). For the reasons set forth below, the Court GRANTS in part Defendants' motion for summary judgment, and in particular, grants summary judgment as to the federal claims and dismisses the state law claims without prejudice.

## I.    Factual Background[2]

Plaintiff Jarron Chapman was born on April 17, 1997. (Defendants' Local Rule 56(a)1 Statement ("Defs.' L.R. 56(a)1 Stmt.") ¶ 6.) Although Chapman was a minor at the time he filed this lawsuit, he is now an adult. (ECF No. 1 ¶ 3; Defs.' L.R. 56(a)1 Stmt. ¶ 6.) Chapman completed his freshman, sophomore, and junior years at Crosby High School (Defs.' L.R. 56(a)1

---

[2] Unless otherwise stated, the following facts are from Defendants' Local Rule 56(a)1 Statement and the documents cited therein. The Plaintiff filed a response to the motion for summary judgment which states that counsel for the Plaintiff "reviewed the materials submitted in support of the defendants' motion for summary judgment," "researched all of the points of law made in that motion," "agrees that the defendants' arguments are legally sound[,] and therefore will not oppose the motion." (ECF No. 30.) The Plaintiff did not file a memorandum in opposition to Defendants' motion for summary judgment and did not file a Local Rule 56(a)2 Statement disputing the material facts set forth in Defendants' Local Rule 56(a)1 Statement. Therefore, "the material facts set forth in Defendant's Local Rule 56(a)(1) Statement—to the extent they are supported by the evidence in the record—are deemed admitted." *Blalock v. Bender*, No. 3:04CV1519 (PCD), 2006 WL 1582217, at *1 (D. Conn. June 1, 2006).

Stmt. ¶ 7), a public school in Waterbury, Connecticut. (*Id*. ¶ 1.) At the times relevant to the complaint—August 27 and August 28, 2014—Defendant Greg Ziogas was interim principal of Crosby, Defendant Michael Harris was an assistant principal at Crosby (*id*. ¶¶ 3-4), Defendant Dr. Kathleen Ouelette was the Superintendent of Schools for the Waterbury Board of Education ("WBE") (*id*. ¶ 2), and Defendant Margaret Cherubini was a secretary for the WBE. (*Id*. ¶5.)

On August 5, 2014, officers from the Waterbury Police Department ("WPD") found Chapman with 48 glassine bags of heroin and arrested him for possession of narcotics with intent to sell. (*Id*. ¶¶ 8-10.) On August 27, 2014, Cherubini "electronically transmitted a copy of the police report" about Chapman's arrest to Ziogas, Harris, and Barbara Bouley. (*Id*. ¶ 16.) Bouley works as a secretary for the WBE and is assigned to Ouelette. (*Id*. ¶ 20.) Harris and Ziogas became aware of Chapman's arrest because of Cherubini's e-mail. (*Id*. ¶¶ 17-18.) The police report was not shared with anyone else. (*Id*. ¶ 49.)

On the morning of August 28, 2014, Ouellette was at Crosby for reasons unrelated to this case. (*Id*. ¶ 21.) While Ouellette was at Crosby, she learned about Chapman's arrest. (Ouellette Aff. ¶ 8.) "Ouellette advised Ziogas and Harris to follow all procedures required to ensure that Chapman received his due process prior to any disciplinary action being taken." (Defs.' L.R. 56(a)1 Stmt. ¶ 24.)

After they reviewed the arrest report, Ziogas and Harris decided to suspend Chapman for ten days, from August 29, 2014, until September 12, 2014, in accordance with WBE policy. (*Id*. ¶ 23.) On August 28, 2014, Ziogas, Harris, and another assistant principal went to Chapman's third period class and brought Chapman to the main office. (Chapman Depo. at 36, 38, 41-42.) Harris asked Chapman if there was anyone that he could call to pick him up from school. (Defs.' L.R. 56(a)1 Stmt. ¶ 28.) Chapman called his mother, Drake, using Ziogas's phone. (*Id*.) Ziogas

and Harris met with Chapman and told him that he was being suspended because of his arrest. (Defs.' L.R. 56(a)1 Stmt. ¶¶ 25-27.) "Harris and Ziogas provided Chapman with an opportunity to explain himself or provide them with his version of events surrounding his arrest" (*id.* ¶ 35), but Chapman declined. (*Id.* ¶ 36.) When Drake arrived, approximately ten minutes after Chapman called her (*id.* ¶¶ 30-31), Chapman left the building and went to Drake's car. (*Id.* ¶ 36 (citing Drake Depo. at 33).) Chapman believed that he was expelled from school on August 28, 2014. (*Id.* ¶ 40.)

When Drake arrived, she went to Harris's office. (*Id.* ¶¶ 30-31.) There, Drake met with Harris and Ziogas, along with a social worker and Mike Tripp, a WPD officer assigned to Crosby as a school resource officer. (*Id.* ¶¶ 37, 42; Drake Depo. at 33.) "Harris told Drake that Chapman was being suspended for ten days due to his arrest and provided her with a Waterbury Public Schools 'policy and procedure handout.'" (Defs.' L.R. 56(a)1 Stmt. ¶ 32.) Harris also told Drake that there would be a hearing to determine whether Chapman would be expelled (*id.* ¶ 33), and that Harris would ask that Chapman not be expelled. (*Id.* ¶ 34.) Drake's meeting with Harris and Ziogas lasted about 20 minutes (*id.* ¶ 37 (citing Drake Depo. at 33)), and "was not confrontational or hostile." (*Id.* ¶ 38 (citing Ziogas Aff. at ¶ 14; Harris Aff. ¶ 6).) Drake met with Harris, Ziogas, and possibly Tripp again on the following day, August 29, 2014, for approximately twenty minutes. (*Id.* ¶¶ 41-43.) "Following the August 29, 2014 meeting, Drake's only interaction with anyone at Crosby from August 29, 2014 to September 11, 2014 was to pick up and hand in the Plaintiff's schoolwork every two days." (*Id.* ¶ 44.)

On August 28, 2014, Ziogas recommended that Ouellette proceed with an expulsion hearing in accordance with the WBE "Safe School and Positive Climate Handbook, Article 5, Section 4(a)(iii)." (*Id.* ¶ 39.) Wendy Owen, Acting Director of Special Education and Pupil

Services for Waterbury Public Schools, sent a letter to Chapman and Drake informing them that an expulsion hearing would take place, and advising them that they would "receive written notification of the date, time, and place of such a hearing." (*Id.* ¶ 45; Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Defs.' Br.") Ex. H.)

Chapman withdrew from Waterbury Public Schools on September 15, 2014 (Defs.' L.R. 56(a)1 Stmt. ¶ 46) and enrolled in Naugatuck Public Schools (*id.* ¶ 48), where he was scheduled to graduate in June 2015. (*Id.* ¶ 50.) An expulsion hearing never took place. (*Id.* ¶ 47.)

## II.    Legal Standard

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 97 (2d Cir. 2000) (citation omitted). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks and citation omitted). On summary judgment, a court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013) (quotation marks and citation omitted).

Although "[t]he non-moving party need not respond to the motion [for summary judgment] . . . , a non-response runs the risk of unresponded-to statements of undisputed facts proferred by the movant being deemed admitted." *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014) (citations omitted). "Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004). "Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Jackson*, 766 F.3d at 194 (citation omitted).

## III. Discussion

### A. Due Process

Chapman[3] alleges that Defendants deprived him of his liberty and property rights, including his right to a public education under the Connecticut Constitution, without due process of law and in violation of the Fourteenth Amendment to the United States Constitution as enforced through 42 U.S.C. §§ 1983 and 1988. (ECF No. 1 ¶ 15.)[4] The Due Process clause of the Fourteenth Amendment of the U.S. Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, §

---

[3] Drake filed this action on behalf of her son, Chapman, who was a minor at the time the complaint was filed. Rule 17(c) of the Federal Rules of Civil Procedure provides that a guardian may represent a minor in a lawsuit. Chapman has now reached the age of majority. *See* Conn. Gen. Stat. § 1-1d (stating that the term "minor" refers to a person under eighteen years old). Therefore, the Court analyzes the complaint as if Chapman brought it.

[4] Paragraph 15 of Plaintiff's complaint is mistakenly labeled as paragraph 5.

1. Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. In order to establish a claim under section 1983, "[t]he conduct at issue must have been committed by a person acting under color of state law and must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (citation and internal quotation marks omitted). The parties do not dispute that Defendants were acting under color of state law. The Due Process clause encompasses three types of claims: (1) claims for deprivations of rights in the Bill of Rights; (2) violations of substantive due process; and (3) violations of procedural due process. *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S. Ct. 975, 983, 108 L. Ed. 2d 100 (1990). Although Chapman does not specify which claims he brings under the Due Process clause, as Defendants note, "he does not assert a violation of a right denoted in the Bill of Rights." (Defs.' Br. at 10.) Therefore, the Court addresses procedural and substantive due process.

### 1.  Procedural Due Process

"A procedural due process analysis proceeds with two questions. '[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 1908, 104 L. Ed. 2d 506 (1989)).

Property interests derive from state law. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972). In *Goss v. Lopez*, the U.S.

Supreme Court held that Ohio state laws—providing for free education to all residents between ages five and 21 and requiring compulsory attendance—gave students in Ohio legitimate claims of entitlement to public education. 419 U.S. 565, 573 (1975). Similarly, the Connecticut Constitution states that, "[t]here shall always be free public elementary and secondary schools in the state. The general assembly shall implement this principle by appropriate legislation," Conn. Const. art. VIII, § 1, and a Connecticut statute makes school attendance compulsory for children ages five to 18. *See* Conn. Gen. Stat. § 10-184. Thus, Chapman has a property interest in attending public high school. *See Packer v. Bd. of Educ. of Town of Thomaston*, 246 Conn. 89, 105, 717 A.2d 117, 128 (1998) (in expulsion case, concluding, based on Connecticut Constitution and statutory scheme, that student had a constitutionally protected property interest in continued participation in the regular educational program at public high school). In addition to their property interest in educational benefits, public school students also have a "liberty interest in reputation," which is implicated by a ten-day suspension from school. *Goss*, 419 U.S. at 576.

In addressing due process for school suspensions, the U.S. Supreme Court concluded:

> Students facing temporary suspension have [liberty and property] interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story. The Clause requires at least these rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school.

*Goss*, 419 U.S. at 581. "There need be no delay between the time 'notice' is given and the time of the hearing. In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred." *Id*. at 582.

8

Here, the Plaintiff was suspended for ten days. Therefore, he was entitled to oral or written notice of the charges against him and an opportunity to explain his version of events. *Id.* at 581-82. If he denied the charges, he was entitled to "an explanation of the evidence the authorities have." *Id.* at 581. It is undisputed that Ziogas and Harris met with Chapman on August 28, 2014, and told him that he was being suspended because of the arrest. (Defs.' L.R. 56(a)1 Stmt. ¶¶ 25-27.) "Harris and Ziogas provided Chapman with an opportunity to explain himself or provide them with his version of events surrounding his arrest" (*id.* ¶ 35), but Chapman declined. (*Id.* ¶ 36.) Thus, Defendants provided Chapman with due process and his claim for violation of procedural due process fails as a matter of law. *See McDonald ex rel. McDonald v. Sweetman*, No. CIV.A. 3:02CV1040 MRK, 2004 WL 717166, at *4 (D. Conn. Mar. 24, 2004) ("before she was suspended, [plaintiff] was given oral notice of the charges against her, an opportunity to present her version of the facts, and an explanation, however feeble, of the evidence against her. That is all the process that is required under the Constitution.").

### 2. Substantive Due Process

"The protections of substantive due process are available only against egregious conduct which goes beyond merely offending some fastidious squeamishness or private sentimentalism and can fairly be viewed as so brutal and offensive to human dignity as to shock the conscience." *Smith ex rel. Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002) (citations and internal quotation marks omitted) (alterations omitted). However, "where a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process." *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005). "Because what is purported to be

9

shocking about Defendants' alleged actions is the deprivation of a property right without procedural due process, the substantive due process claim must either be subsumed in the more particular procedural due process claim or must fail." *Barsoumian v. Williams*, 29 F. Supp. 3d 303, 315 (W.D.N.Y. 2014) (citing *Velez*, 401 F.3d. at 94). Thus, to the extent that Chapman claims that Defendants violated his substantive due process rights, those allegations are subsumed by his procedural due process claims.

Moreover, Defendants' conduct was appropriate and was not egregious, brutal, offensive, or conscience-shocking. Harris and Ziogas took Chapman out of class, told him that he was being suspended due to his arrest for possession of narcotics (in accordance with WBE policy), and gave him an "opportunity to explain himself or provide them with his version of events surrounding his arrest." (Defs.' L.R. 56(a)1 Stmt. ¶ 35.) Chapman declined. (*Id*. ¶ 36.) Harris and Ziogas then met with Drake for about twenty minutes. (*Id*. ¶ 37.) They told Drake that Chapman was being suspended for ten days due to his arrest and provided Drake with a Waterbury Public Schools "policy and procedure handout." (*Id*. ¶¶ 28-36.) Harris also told Drake that there would be a hearing to determine whether Chapman would be expelled (*id*. ¶ 33), and that Harris would ask that Chapman not be expelled. (*Id*. ¶ 34.) The meeting "was not confrontational or hostile." (*Id*. ¶¶ 37-38.) Chapman withdrew from Waterbury Public Schools and enrolled in Naugatuck Public Schools before any expulsion hearing took place. (*Id*. ¶¶ 46-48.) Defendants' conduct in meeting with Chapman and his mother and explaining that he would be suspended for ten days due to his arrest was appropriate, and no reasonable juror could view it "as so brutal and offensive to human dignity as to shock the conscience." Thus, "this Court cannot conclude that the school officials' actions in this case rise to the level of a violation of Plaintiff's substantive due process rights." *Sweetman*, 2004 WL 717166, at *6 (finding no violation of substantive due

process where student accused of giving marijuana-laced brownies to classmates was locked in

an office by school administrators, told that information that could corroborate her innocence

would be ignored, and suspended for ten days); *see also Smith*, 298 F.3d at 173 (teacher who

slapped student in face did not violate student's substantive due process); *J.E. ex rel. Edwards v.*

*Ctr. Moriches Union Free Sch. Dist.*, 898 F. Supp. 2d 516, 539 (E.D.N.Y. 2012) (security guard

who punched and yelled racial epithets at plaintiffs while trying to break up a fight between

students did not violate substantive due process). Thus, to the extent that Chapman claims that

his substantive due process rights were violated, that claim fails as a matter of law.

### B.  State Law Claims

When all federal claims have been dismissed the district court has discretion to decline to

exercise supplemental jurisdiction over the state law claims and may dismiss them under 28

U.S.C. § 1367(c)(3). *Scirpo v. McCarthy*, No. 3:09CV1626 WWE, 2013 WL 3539613, at *6 (D.

Conn. July 11, 2013). "[I]f it appears that the state issues substantially predominate, whether in

terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy

sought, the state claims may be dismissed without prejudice and left for resolution to state

tribunals." *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (quoting *United*

*Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-27 (1966)). Here, the remaining claims are

that Defendants deprived Chapman of his privacy rights under state law and engaged in extreme

and outrageous conduct knowing it was likely to cause him emotional distress (and that did cause

him to emotional distress). These state-law claims are more appropriate for resolution by state

courts. *See Sweetman*, 2004 WL 717166, at *7 ("While considerations of judicial economy and

convenience do not lean strongly in either direction, the nature of the case and Defendants' status

as state actors suggests that it would be more appropriate and fair for a state court to determine

11

whether the behavior of school officials in this case was sufficiently egregious to violate state law."). Therefore, the Court declines to exercise supplemental jurisdiction over the Plaintiff's state law claims, and they are dismissed without prejudice.

## IV.    Conclusion

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment as to the federal claims and dismisses the state law claims without prejudice. (ECF No. 29.) The Family Educational Rights and Privacy Act ("FERPA") and the Individuals with Disabilities Education Act ("IDEA") protect the confidentiality of certain educational information contained in the Defendants' motion for summary judgment, memorandum of law, and supporting exhibits. Therefore, the Court finds that there are clear and compelling reasons to seal Defendants' memorandum of law and supporting exhibits. Because Defendants filed a redacted public version of the memorandum of law and supporting exhibits—in which only confidential material is redacted—the Court finds that sealing these documents is narrowly tailored to serve the clear and compelling reasons identified. Therefore, the Court GRANTS Defendants' motion to seal. (ECF No. 28.)

IT IS SO ORDERED

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
              August 9, 2016

12